## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRUDI T. SANDERS** ) | |
| **9104 Morrissette Court** ) | |
| **Clinton, MD 20735** ) | |
|     **Plaintiff** ) | |
| ) | |
|     **v.** ) | **Civil Action No. _____** |
| ) | |
| **JOHN F. KERRY, SECRETARY** ) | |
| **U.S. DEPARTMENT OF STATE** ) | |
| **2201 C Street, NW** ) | |
| **Washington, D.C. 20520** ) | |
|     **Defendant** ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Trudi T. Sanders, by her attorney, Jerry R. Goldstein, hereby sues John

Kerry, Secretary of State, and alleges as follows:

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Sec. 2000e-16(c); the Rehabilitation Act of 1973, as amended, 29

U.S.C. Sec. 791 et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. Sec.

633a(c) et seq.

2. Venue lies in this Court pursuant to 42 U.S.C. Sec. 2000e-5(f), and 28 U.S.C.

Sec. 1391(b).

3. All statutory prerequisites to suit have been timely satisfied.

### Background Facts

4. Plaintiff Trudi T. Sanders ("Sanders") is a resident of the State of Maryland,

who has been employed at the U.S. Department of State ("the Agency" or "DOS") for

over 35 years.  She is a 52-year-old (DOB 6/9/62), African-American female, and is

currently a GS-14 Program Analyst in the Management Analysis Section ("MAS") of the

Messaging Systems Office ("MSO") in the Information Resource Management ("IRM")

Bureau.

    5.  Defendant John F. Kerry is the Secretary of State who is being sued in his

official capacity.

    6. Sanders filed a previous discrimination complaint against the Agency in 1989

which  involved the repeated refusal to move her out of a smoke-filled office until she

developed serious medical problems and had to have half of her left lung removed.

    7.  In 1999 Sanders filed another discrimination complaint involving the denial of

sick leave, overcharging her for leave and/or LWOP, and other issues, when she

experienced more breathing difficulties, which led to another lung surgery, radiation

treatment, breast surgery, and the loss of a vocal cord.   That case was settled in 2000.

    8.  As a result of losing half of her lung, Sanders has diminished lung capacity

which affects her ability to breathe and, therefore, to walk.  She also suffered a neck

injury at work in 2011 which affected her movements, and she has a heart condition and

is diabetic.  In addition, as a result of multiple cancer surgeries and radiation treatments,

she has lost all or parts of her liver, pancreas, spleen, gallbladder, bladder, and colon,

which affects her genitourinary, immune, and cardiovascular systems, among other

things, and causes her to have discomfort, pain, and fatigue when walking and doing

other tasks, and also affects the frequency and time she needs to use the restroom.

    9. In January 2011 Sanders was officially reassigned, along with her position

(FTE),  from her job in the main DOS building to MSO/MAS, located at 2025 E St., NW,

as a result of a reorganization.  During 2010 Sanders served as Acting Director of the

Intelligence Resources and Planning Division, which was a GS-15 position, and

continued performing some of those duties even after her reassignment. However, she

never received any GS-15 pay, even though the male who served as Acting Director

before her did.

10. Sanders was originally supposed to be reassigned to the "SMART" Division

of MSO in Newington, VA, along with the employees she had supervised as Acting

Director.  However, upon Sanders reassignment to MSO, the MSO Director, Glen

Johnson ("Johnson"), asked her to work in MAS where Sanders thought that she would

be reporting directly to him.  Instead, her first-line supervisor became Patsy Butler

("Butler"), and Johnson (now Deputy CIO for Operations), was her second-line

supervisor.

11.  Prior to her reassignment into MAS, Sanders was permitted to have a flexible

schedule whereby she could arrive to work as late as 10:00 a.m. and stay later in order to

minimize her commuting time from Maryland which caused difficulties for her due to her

medical condition. She was also given parking in the building.

12.  Upon her reassignment to MAS, despite repeated requests and visits to the

HR office for assistance, Sanders was not given a performance plan, performance

appraisals, or work elements by Butler for over two years – until 2013. Sanders

essentially assigned work to herself due to the lack of work assignments from Butler.

Other employees and newly hired private industry contractors who reported to Butler had

performance plans with work elements and received regular mid-year and year-end

performance appraisals. They also received temporary and permanent promotions and some had parking in the building.

13.  Because Sanders had no performance appraisal between 2010 and 2013, she was not  able to qualify to apply for other "federal employee only" positions at the Agency or elsewhere in the federal government.  Her attempt to apply for a "DOS employee only" position at DOS was rejected because of the lack of a current performance appraisal.  When Sanders asked HR staff if she could write her own work requirements, she was told that she could not.

14.  In late 2010, in anticipation of her reassignment, Sanders met with Johnson and made him aware of her medical condition.  Sanders also made Butler aware of her medical conditions during discussions in late 2010 and early 2011.

15.  On many occasions during 2011-2013 Sanders discussed her medical condition with Butler and Johnson and her need for reasonable accommodations, including parking in the building and telework, and a flexible work hours/alternate work schedule such that she could arrive at work after 9:00 a.m. and correspondingly leave slightly later in order to avoid the long rush-hour commutes to the office from her home in Maryland as she had done prior to her reassignment to MAS.

16.  Sanders was eventually able to get parking in the building for two years (October 2011 - October 2013) over Butler's opposition, but it was taken away again by Johnson in November 2013, requiring Sanders to park several blocks away and walk to the building ever since despite the difficulty she has in walking to the building and her special needs regarding using the restroom frequently and for longer periods due to her

4

medical condition.

17.   Even though the Agency had Sanders' medical records and she provided the Agency with additional requests from her health care providers on multiple occasions of the need for her to have a flexible work schedule and/or telecommute in 2011-2013, those accommodations were not permitted.  On one occasion she was told that her position did not have enough work to qualify her for telework, but generally, the Agency simply told her that she had to arrive at work by the scheduled starting time of 9:00 a.m., although she was willing to reduce her lunch break time and/or work later than her normal departure time of 5:45 p.m. in order to be able to arrive later.

18.   The Agency did not engage in the interactive process during this period and simply insisted that Sanders had to be at work during what it maintained were the core hours of 9:00 a.m. to 3:00 p.m., even though Sanders had no performance plan or work elements for over two years.

19.   It was not until Sanders had a recurrence of cancer during 2014 and needed further surgery and followup treatment that the Agency finally allowed her to arrive at 9:30 a.m. as a temporary accommodation, but only if she reduced her lunch period by 15 minutes and left the office by 6:00 p.m. because Butler insisted on that, so Sanders takes a shorter lunch period instead.

20.   Due to the difficulties in getting to work by 9:00 a.m. because of her medical condition and having to park and walk to the building, Sanders has been late many times and has had to use leave frequently and also has had to use leave for many doctor's appointments and medical tests.

5

21.  As a result of her medical condition and need for accommodation, and/or other discriminatory and/or retaliatory reasons, Sanders has been relentlessly harassed by Butler and others.  This has included, but not been limited to, the following:

(a) Treating Sanders as AWOL and falsely indicating that Sanders had approved Butler's AWOL designation for Sanders on a payroll record in July 2011when Sanders was caring for her dying mother and had already received tentative approval for the leave;

(b) Issuing Sanders an unwarranted Letter of Counseling on or about November 4, 2011;

(c) Issuing Sanders an unwarranted Letter of Warning on or about March 7, 2014;

(d) Requesting that Sanders be placed on leave restriction, which she was for six months on March, 19, 2014 (subsequently extended on September 16, 2014 for another six months);

(e) Requiring Sanders to sign in and out on a log and sanctioning her if she failed to do it even though others failed to do it without such consequences;

(f) Requiring Sanders to take leave for her lunch time, and for riding the DOS shuttlebus to DOS meetings;

(g) Arbitrarily denying or questioning Sanders' leave request forms or letting her leave request forms sit for days or weeks, sometimes until after the date for which the leave was requested, including for doctor's appointments;

(h) Allowing other employees and contractors, but not Sanders, to arrive late and stay late, telework, and get comp time/credit and/or overtime for working early or late;

(i) Threatening Sanders with AWOL repeatedly, including when she had meetings

6

with the EEO Counselor or her attorney;

(j) Denying Sanders requests to telework and/or have a flexible work schedule with flexible later arrival times;

(k) Designating someone other than Sanders to substitute and/or act for Butler when she is absent, even though Sanders may be a higher grade than the other person and has previously functioned as a manager, supervisor, Division Chief and Acting Director;

(l) Denying Sanders official time to meet with the EEO Counselor and to attend meetings regarding her requests for an accommodation;

(m) Denying Sanders' training requests;

(n) Denying Sander's requests to attend meetings; and

(o) Excessively monitoring Sanders, including when she attended meetings and/or went to the bathroom, and falsely accusing her of not returning to work after a fire drill.

22.  The foregoing issues led Sanders to file three EEO complaints with the Agency, designated as No. DOS-F-007-12 (informal complaint initiated 9/15/11, formal complaint filed 10/28/11), No. DOS-0162-13 (informal complaint initiated 6/19/13, formal complaint filed 8/1/13), and No. DOS-0175-14 (informal complaint initiated 4/24/14, formal complaint filed 5/30/14).

## COUNT I
### (Violations of Rehabilitation Act)

23.  Sanders realleges and incorporates Paragraphs 1 through 22 herein.

24.  Sanders is a qualified person with a disability under the provisions of the Rehabilitation Act.

7

25.  Sanders' history of cancer and its treatment constitutes a "record of disability" under the Rehabilitation Act.

26.  The Agency is an employer subject to the Rehabilitation Act.

27.  The Agency violated the Rehabilitation Act by:

(a) Failing to engage in the interactive process regarding a reasonable accommodation for Sanders;

(b) Failing to and delaying in providing a reasonable accommodation to Sanders;

(c) Treating a 9:00 a.m. starting time as an essential function of Sanders' job when it was not;

(d) Harassing and otherwise discriminating against Sanders because of her disability and/or her record of disability;

(e) Retaliating against Sanders for engaging in protected activity under the Act; and/or

(f) Subjecting Sanders to a hostile work environment on the basis of her disability and/or her record of disability.

28.  As a result of the violations as aforesaid, Sanders has been adversely affected in terms of compensation, benefits, lost promotional opportunities, past and future pecuniary losses, humiliation and mental anguish, physical harm, and other non-pecuniary losses.

WHEREFORE, Sanders demands judgment against the Agency and prays that the Court:

1.  Order her appointment and/or reassignment to an appropriate position.

8

2.  Award her full back pay and benefits.

3.  Award her compensatory damages of $300,000.

4.  Award her reasonable attorney's fees and the costs of this litigation.

5.  Award her such front pay and future benefits as may be appropriate.

6.  Enjoin the Agency from discriminating against, retaliating against, or harassing her in any manner.

7.  Award her appropriate prejudgment interest.

8.  Award such other relief as may be necessary and proper.

## COUNT II
## (Violations of ADEA)

29.  Sanders realleges and incorporates Paragraphs 1 through 28 herein.

30.  The treatment of Sanders as aforesaid constitutes intentional disparate treatment on the basis of her age in violation of the ADEA.

31.  The treatment of Sanders as aforesaid constitutes retaliation in violation of the ADEA.

32.  The treatment of Sanders as aforesaid subjected her to a hostile work environment on the basis of her age in violation of the ADEA.

33.  As a result of the violations as aforesaid, Sanders has been adversely affected in terms of compensation, benefits, lost promotional opportunities, past and future pecuniary losses, humiliation and mental anguish, physical harm, and other non-pecuniary losses.

WHEREFORE, Sanders demands judgment against the Agency and prays that the

Court:

1.  Order her appointment and/or reassignment to an appropriate position.

2.  Award her full back pay and benefits.

3.  Award her compensatory damages of $300,000.

4.  Award her liquidated damages.

5.  Award her reasonable attorney's fees and the costs of this litigation.

6.  Award her such front pay and future benefits as may be appropriate.

7.  Enjoin the Agency from discriminating against, retaliating against, or harassing

her in any manner.

8.  Award her appropriate prejudgment interest.

9.  Award such other relief as may be necessary and proper.

## COUNT III
## (Violations of Title VII)

34.  Sanders realleges and incorporates Paragraphs 1 through 33 herein.

35.  The treatment of Sanders as aforesaid constitutes intentional disparate

treatment on the basis of her race, color, and/or sex in violation of Title VII.

36.  The treatment of Sanders as aforesaid constitutes retaliation in violation of

Title VII.

37.  The treatment of Sanders as aforesaid subjected her to a hostile work

environment on the basis of her race, color, and/or sex in violation of Title VII.

38.  As a result of the violations as aforesaid, Sanders has been adversely affected

in terms of compensation, benefits, lost promotional opportunities, past and future

pecuniary losses, humiliation and mental anguish, physical harm, and other non-pecuniary losses.

WHEREFORE, Sanders demands judgment against the Agency and prays that the Court:

1. Order her appointment and/or reassignment to an appropriate position.

2. Award her full back pay and benefits.

3. Award her compensatory damages of $300,000.

4. Award her reasonable attorney's fees and the costs of this litigation.

5. Award her such front pay and future benefits as may be appropriate.

6. Enjoin the Agency from discriminating against, retaliating against, or harassing her in any manner.

7. Award her appropriate prejudgment interest.

8. Award such other relief as may be necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by a jury.

/s / **JERRY R. GOLDSTEIN**
    Jerry R. Goldstein (Bar No. 173690)
    Jerry R. Goldstein, P.C.
    4610 Elm St.
    Bethesda, MD 20815
    (301) 656-1177
    (301) 986-9719 Fax
    jrg4law@aol.com
    Attorney for Plaintiff